UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

CARLOS ORTIZ,

           Plaintiff,                Case No. 1:23-cv-1241

v.                                     Honorable Phillip J. Green

JOHN DAVIDS, et al.,

           Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis* in a prior order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 19, PageID.191.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim against Defendants Jones, Unknown Party #2, Unknown Party #3, and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Unknown Party #4. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad: (i) all Eighth Amendment conditions of confinement claims, *except* for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions; and (ii) Fourteenth Amendment due process and equal protection claims. Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions against Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following ICF officials and medical staff: Warden John Davids, Deputy Warden Unknown Bonn, Assistant Deputy Warden Unknown Dunnigan, Resident Unit Manager Unknown Luther, Prison Counselor Unknown Smith, Prisoner Counselor Unknown Party #1, Resident Unit Manager Unknown High Smith, Prison Counselor Unknown Conrad, Sergeant Unknown Jones, and Unknown Parties #2, #3, and #4. (Am. Compl., ECF No. 19, PageID.186–188.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.187–188.) Plaintiff indicates that Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party

4

#1, High Smith, and Conrad are members of the security classification committee (SCC). (*Id.*)

In Plaintiff's amended complaint,[2] he alleges that on August 31, 2022, he was "involuntarily" transferred to the Start Now Program[3] at ICF "without being provided any reclassification hearing to administrative segregation."[4] (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)[5] Plaintiff claims that the Defendants who are members of the SCC placed Plaintiff "in segregation in solitary confinement over 180 days." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Plaintiff "informed the SCC Defendants that [his] placement in long term administrative seg[regation] may cause an increase[] in [his] mental health symptoms and mental deterioration, yet knowing

---

[2] Originally, Plaintiff filed a civil rights action with eight other state prisoners. (*See* ECF No. 1.) In an order entered on November 28, 2023, the Court, *inter alia*, concluded that the interests of justice favored severing the Plaintiffs' claims into separate actions. (ECF No. 16, PageID.175–179.) The Court directed each remaining Plaintiff to file an amended complaint in that Plaintiff's newly opened action. (*Id.*, PageID.181.) Plaintiff filed an amended complaint, and his claims continue in the instant case.

[3] The Court has previously recognized that Start Units are programs designed to provide an alternative to administrative segregation for those inmates who, *inter alia*, have been diagnosed with serious mental illnesses. *See Medina-Rodriguez v. Frank*, No. 1:22-cv-471, 2022 WL 17038113, at *2 n.2 (W.D. Mich. Nov. 17, 2022). "Inmates are classified according to stage, with corresponding restrictions." *Id.*

[4] The copy of Plaintiff's factual allegations included in Plaintiff's amended complaint is illegible because the copy is too light in color. (*See* Am. Compl., ECF No. 19, PageID.190.) However, it is clear that Plaintiff simply resubmitted the factual allegations set forth on PageID.31 of the original complaint because the Court's header for that document is at the top of the page of the factual allegations in Plaintiff's amended complaint. Therefore, the Court will look to PageID.31 in ECF No. 1, which legibly sets forth Plaintiff's factual allegations.

[5] In this opinion, the Court corrects the spelling and capitalization in quotations from Plaintiff's filings.

this . . . the [SCC] Defendants forced [Plaintiff] into long term seg[regation] standards anyway." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

Plaintiff alleges that he "complained to them of an increase in depression, insomnia, and lack of rest at night due to loud sexual moans [and] screams by program staff," as well as "suicidal thoughts, crying spells, anxiety attacks, . . . mood swings, [and] PTSD." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) At some unspecified time, "program staff . . . assault[ed] [Plaintiff]." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

Plaintiff claims that he "was only allowed monthly (once a month) mental health counseling, placed in yard cages for only 1 hour, yet all other prisoners in the [M]DOC receive 2 hours [of] exercise yard," and he was "placed in cage showers of 10 minutes (3 times a week) when all other general pop[ulation] prisoners shower daily for 15 to 20 minutes, denied the opportunity for family and friends to order secure packs yet all other [general population] prisoners are not denied this privilege." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Plaintiff also claims that he is "denied an adequate store list with the appropriate hygiene items due to being provided with segregation punitive store lists." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth and Fourteenth Amendments. (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) As relief, Plaintiff seeks compensatory and punitive damages, as well as his costs for the suit. (ECF No. 19, PageID.191.) Plaintiff also asks for a

6

"declaratory ruling" that Defendants' "acts and omissions" violated Plaintiff's Eighth and Fourteenth Amendment rights.[6] (*Id.*)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[6] When setting forth the declaratory relief that Plaintiff seeks, he references the Eighth and Fourteenth Amendments "to the U.S. Constitution [and] Michigan law." (ECF No. 19, PageID.191.) Plaintiff's complaint contains no further reference to state law violations. Because Plaintiff fails to identify any specific state law claims in the amended complaint, to the extent that Plaintiff intended to bring any state law claims, such claims are subject to dismissal for failure to state a claim.

7

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4

With respect to Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4, Plaintiff fails to allege facts showing how these Defendants were personally involved in the violation of his constitutional rights. (*See* ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Specifically, when listing the Defendants named in this action, Plaintiff lists these Defendants, however, Plaintiff fails to name Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4 in the body of his complaint. Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*,

8

92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002). Plaintiff's claims against Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4, therefore, fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Accordingly, Plaintiff's claims against Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4 will be dismissed.

### B. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id*.

9

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### 1. Claim Regarding Continued Detention in Segregation-Like Conditions

In this action, Plaintiff claims that he was placed in the Start Now Program on August 31, 2022. (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Plaintiff alleges that he "informed the SCC Defendants [(Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad)] that [his] placement in long term administrative seg[regation] may cause an increase[] in [his] mental health symptoms and mental deterioration, yet knowing this . . . the [SCC] Defendants forced [Plaintiff] into long term seg[regation] standards anyway." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Plaintiff also alleges that he "complained to them of an increase in depression [and] insomnia," as well as "suicidal thoughts, crying spells, anxiety attacks, . . . mood swings, [and] PTSD." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

Plaintiff's allegations suggest that he has serious mental health issues, and that Defendants were aware of this, but that Defendants, as members of the SCC, continued to house Plaintiff in a restrictive segregation setting for more than a year.

10

(*See* ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Although Plaintiff has by no means proven his Eighth Amendment claims, at this stage of the proceedings, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's Eighth Amendment claims regarding his continued detention in segregation-like conditions against Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad, all of whom Plaintiff identifies as members of the SCC. *Cf. J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) ("Placement of a mentally-ill detainee in solitary confinement 'raises a genuine concern that the negative psychological effects of his segregation will drive him to self-harm.'" (citation omitted)); *Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020) (concluding that the prisoner-plaintiff's Eighth Amendment claim against members of the SCC regarding his conditions of confinement, which he alleged were more severe than typical conditions of segregation, and which he alleged had a particularly "deleterious impact on him" due to his mental illness could not be dismissed on initial review).

### 2. Other Intended Eighth Amendment Claims

In addition to the above-discussed Eighth Amendment claim, Plaintiff alleges that at some unspecified time, "program staff . . . assault[ed] [Plaintiff]," and that he had a "lack of rest at night due to loud sexual moans [and] screams by program staff." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Plaintiff also alleges that he was "was only allowed monthly (once a month) mental health counseling, placed in yard cages for only 1 hour," and "placed in cage showers of 10 minutes (3 times a week)." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.) Further, Plaintiff alleges that he

was "denied an adequate store list with the appropriate hygiene items due to being provided with segregation punitive store lists." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

As to these allegations, Plaintiff fails to allege any facts to suggest that the named Defendants were personally involved in these alleged violations of his constitutional rights. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61. And, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). Instead, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, with respect to the above-discussed Eighth Amendment violations, Plaintiff fails to allege facts showing that Defendants were aware of these issues, let alone that they were personally involved in the alleged violations of Plaintiff's constitutional rights. Further, Plaintiff fails to allege any *facts* showing that Defendants encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants were personally involved in the alleged violations of Plaintiff's Eighth Amendment rights as related to the above-discussed conditions of his confinement.

Accordingly, for all of the reasons set forth above, all intended Eighth Amendment conditions of confinement claims, except for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions,

against Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad will be dismissed.

### C. Fourteenth Amendment Claims

#### 1. Due Process Claims

The Court also construes Plaintiff's amended complaint to raise due process claims regarding his placement in the Start Now Program. (*See* Am. Compl., ECF No. 18, PageID.186 (stating that on August 31, 2022, Plaintiff was "involuntarily" transferred to the Start Now Program at ICF "without being provided any reclassification hearing to administrative segregation").)

##### a. Procedural Due Process Claims

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right

14

creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff's amended complaint suggests that he was improperly placed in the Start Now Program without due process. Plaintiff contends that the conditions of the Start Now Program are similar to segregation. Additionally, Plaintiff states that at an unspecified time, he was "in segregation in solitary confinement over 180 days." (Am. Compl., ECF No. 18, PageID.186.) Plaintiff does not allege that his placement in the Start Now Program will affect the duration of his sentence, and as explained below, Plaintiff has failed to allege sufficient facts to show that the Start Now Program is an atypical and significant deprivation.

As an initial matter, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Although Plaintiff claims in a conclusory manner that the conditions of the Start Now Program are similar to segregation, Plaintiff alleges insufficient facts to suggest that his placement there is an atypical and significant deprivation. *See, e.g., Jackson v.*

15

*Berean*, No. 1:18-cv-1075, 2019 WL 1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021). Furthermore, as to Plaintiff's placement "in segregation in solitary confinement over 180 days," generally only periods of such confinement lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Accordingly, for the reasons set forth above, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants regarding his placement in the Start Now Program.

### b. Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v.*

16

*Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, it is clear that Plaintiff disagreed with his placement in the Start Now Program, however, Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claims against Defendants will be dismissed.

    **2.**    **Equal Protection Claims**

In Plaintiff's amended complaint, he alleges that he "was only allowed monthly (once a month) mental health counseling, placed in yard cages for only 1 hour, yet all other prisoners in the [M]DOC receive 2 hours [of] exercise yard," and he was "placed in cage showers of 10 minutes (3 times a week) when all other general pop[ulation] prisoners shower daily for 15 to 20 minutes, denied the opportunity for family and friends to order secure packs yet all other [general population] prisoners are not denied this privilege." (ECF No. 1, PageID.31; ECF No. 19, PageID.190.)

17

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

As an initial matter, it is not at all clear from Plaintiff's amended complaint that Start Now Program participants and general population prisoners are similarly situated in all relevant respects. Indeed, Plaintiff fails to allege any facts to show that general population inmates were similar in all relevant aspects. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are

18

wholly conclusory and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Moreover, Plaintiff fails to allege sufficient facts to show that the named Defendants were involved in the alleged violation of his equal protection rights. *See Gilmore*, 92 F. App'x at 190 (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier*, 41 F. App'x at 764 (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Accordingly, for all of these reasons, the Court will dismiss any intended Fourteenth Amendment equal protection claims.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Jones, Unknown Party #2, Unknown Party #3, and Unknown Party #4 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Davids, Bonn, Dunnigan, Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad: (i) all Eighth Amendment conditions of confinement claims, *except* for Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions; and (ii) Fourteenth Amendment due process and equal protection claims. Plaintiff's Eighth Amendment claim regarding his continued detention in segregation-like conditions against Defendants Davids, Bonn, Dunnigan,

Luther, Unknown Smith, Unknown Party #1, High Smith, and Conrad remains in the case.

    An order consistent with this opinion will be entered.


Dated:  April 9, 2024                       /s/ Phillip J. Green
                                                      PHILLIP J. GREEN
                                                      United States Magistrate Judge